UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
        v.                      )        CRIMINAL NO. 24-CR-10391-IT
                                )
MAHDI MOHAMMAD SADEGHI          )


**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF RELEASE</u>**

Mahdi Sadeghi respectfully moves this Honorable Court to release him. In support of this motion, defendant states that 18 U.S.C. § 3142(c)(2) mandates the release of all persons facing trial unless no condition, or combination of conditions, will reasonably assure the appearance of the person as required and the safety of the community.

Mr. Sadeghi is 42 years old. He has no criminal record, does not pose a flight risk, and has a strong community support network in the Boston area. He moved to the United States from Iran to pursue his PhD in Electrical Engineering, which he received at the University of Michigan in 2014. Since then, he moved with his wife to Massachusetts where they have settled into the community in Natick. They obtained wonderful jobs in their respective fields, built a home, and welcomed their children, now aged 2 and 6. Until this false allegation, they have lived the American dream.

In this memorandum, defendant addresses the standard for detention and the factors that weigh in favor of his release.

      I.    <u>Procedural History</u>

Mr. Sadeghi was arrested on December 16, 2024. He was arrested at work; his wife was working from home in Natick, while their children were either in school or at daycare, when

authorities arrived to execute a search. At all times the family was cooperative with the authorities. The FBI seized the family's passports,[1] devices, and many other items. Mr. Sadeghi has been detained since his arrest. On December 18th, a Pre-Trial Services interview was conducted ahead of his December 27th detention hearing. A few hours before that hearing, the Probation Department issued their Report recommending detention.[2] In light of that report, and in the continued hope that the Government may agree to his release, Mr. Sadeghi moved to continue that hearing.

At both the December 16th and December 27th court appearances, the Government indicated that there may be conditions of release that could be agreed upon. In an effort to work with the Government towards an agreement to release, Mr. Sadeghi provided two letters addressing specific questions and concerns the Government posed.[3]

On Friday, January 10th, the Government informed counsel that they would seek Mr. Sadeghi's detention.

II.    Detention May Only Be Based on Flight Risk

The government has sought detention on the basis of risk of flight. The Court therefore has no authority to consider or detain on the basis of dangerousness because the crimes charged are not crimes of violence under § 3142(f)(1). We make particular note of this as the Pre-Trial Services Report erroneously suggested that the Court consider his dangerousness because of the

---

1 Mr. Sadeghi and Ms. Mohavedi's passports remain with the Government. Their children's passports are now in the possession of Defense Counsel. All will be surrendered to the Probation Department if the Court were to order his release.
2 On the advice of counsel, Mr. Sadeghi declined to answer questions related to travel and limited his discussion of prior employment to the last five years. The tenor of the Report strongly suggests that following the advice of his counsel was held against Mr. Sadeghi. As a result, Defense Counsel requested that Mr. Sadeghi be re-interviewed. The Probation Department would not re-interview him. Mr. Sadeghi submitted three additional documents as a result. Two are attached under seal and describe his domestic and international travel. The third was a document that offered corrections to the Report. Mr. Sadeghi understands the Report will be corrected and does not attach it to these materials.
3 Exhibit 1 – Letters to the Government

nature of the offense (for which he is presumed innocent) and his association with the co-
defendant, who is currently detained in Italy, with no identifiable date to appear in the United
States.

In *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988), the First Circuit held that "where
detention is based on dangerousness grounds, it can be ordered only in cases involving one of the
circumstances set forth in § 3142(f)(1). …[T]he Bail Reform Act created a new type of detention
- preventive detention - to be invoked only under certain conditions. Insofar as in the present
case there is no longer any contention that any of the subsection (f)(1) conditions were met, pre-
trial detention solely on the ground of dangerousness to another person or to the community is
not authorized." *Ploof*, 851 F.2d at 11-12.

What the Court must weigh is whether the Government has proven, by a preponderance
of the evidence, that Mr. Sadeghi is a risk of flight and that no condition or combination of
conditions can reasonably assure his appearance. *See United States v. DiGiacomo*, 746 F.Supp.
1176, 1181 (D. Mass. 1990) ("With regard to the risk of flight as a basis for detention, the
government must prove by a preponderance of the evidence that no combination of conditions
will reasonably assure each defendant's appearance at future court proceedings." (*citing United
States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 841 (1986))).

While the preponderance standard is lower than other burdens found in our legal system,
courts have released defendants facing significant consequences or with a history of living
outside of the United States. *See, e.g.*, *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985)
(releasing defendant, an Iranian citizen with U.S. green card, in a case for exporting items to Iran
where he had significant financial resources in Iran and could go to Iran "with impunity");
*United States v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996) (releasing defendant, a Turkish citizen

accused of providing false name in passport application); *United States v. Solis*, 453 F. Supp. 3d 1161 (S.D. Iowa 2020) (releasing defendant in methamphetamine case with presumption of detention and immigration issues where defendant and her co-defendant spouse had several children and significant ties to their town in Minnesota); *United States v. Simone*, 317 F. Supp. 2d 38 (D. Mass. 2004) (releasing defendant in RICO indictment in part because of 3-year delay in charging and ties to the community).

        III.    <u>Mr. Sadeghi Has Demonstrated that He Is Not A Flight Risk</u>

        Mr. Sadeghi came to the United States with a student visa in 2007 to live in Michigan and pursue his PhD. He received his doctorate degree in 2014. He married his wife, Narjes, in 2009 , and she joined him in Michigan in 2010, where she received her doctorate degree from ██████ ███████████ in 2015. Mr. Sadeghi and his wife are highly accomplished professionals with an impeccable record. They made a choice to permanently move to the United States because they believe it holds better opportunities for them and their children. They also choose to live in the United States because they do not support the oppressive regime in Iran.

        In 2015, Narjes was offered a position at ███████ as a software developer (as an intern and started her permanent position in Feb 2016). Mr. Sadeghi had not yet found a permanent position and they chose to prioritize his wife's career by moving to Massachusetts. They lived with friends (or sublet an apartment for a short time) until they were able to afford to buy their own home. Mr. Sadeghi soon found work in Massachusetts, concretizing their life here.

        Mr. Sadeghi's children are 6 and 2 years old. His 6-year-old is in public school and goes to an afterschool program in Natick and his 2-year-old is in daycare. Since his arrest, their routine is in chaos. The children stopped going to school and day care for several days. Narjes has pushed the children to get back to school as much as possible and is working with a social,

behavioral consultant through the school. The only way the family is coping with this is to have friends come to the house every day and stay until bed time to help the kids go to sleep. The family is unable to function normally in Mr. Sadeghi's absence. His children cannot go to sleep without the comfort of their father in the home. To say he is an engaged parent is a vast understatement. Mr. Sadeghi is his six-year-old's hero – which is apparent in the art he made for his school.[4] His 2-year-old child falls asleep with him every night. Even when he travels for work, he speaks with his children every day. As Narjes explains, "I've rarely witnessed such a profound, unshakeable bond between a father and his children."[5] The day after his arrest was the first day in their lives that they did not hear his voice. With his employment terminated, and with our proposed home confinement order, the family imagines that Mr. Sadeghi will care for his youngest child full time and remove him from daycare.

    In February 2021 Mr. Sadeghi applied for temporary permanent residency status (green cards) for his parents. His mother's green card has been approved; his father's is still pending. His mother has not yet traveled to the United States on her green card because she wishes to come with her husband. Narjes has applied for a green card for her sister; she has not yet applied for her own parents because they care for their parents who are elderly and cannot travel. Their long-term plan is to have all four grandparents of the children move to the United States. These facts show not only that Mr. Sadeghi and his family will follow immigration laws and use appropriate channels for visiting relatives, but it also demonstrates their long-term commitment to a life in the United States. *C.f. United States v. Mehanna*, 669 F. Supp. 2d 160, 162 (D. Mass. 2009) (defendant detained, in part, because he engaged in online discussion emphasizing a desire to leave the United States).

---

4 *See* support letter of Narges Mohavedi.
5 *Id.*

Mr. Sadeghi has seen an immense outpouring of support from his community here in Massachusetts and in Michigan.[6] His supporters write of a loving and attentive husband and father. Abbas Sohrabpour describes Mr. Sadeghi and Narjes as "a loving family graciously opening their doors to the community." His supporters go on to describe Mr. Sadeghi as caring neighbor, an intellectual committed to his field of engineering, and a trustworthy friend. "What truly sets him apart is his unwavering commitment to others", says Ali Attari, a longtime friend of Mr. Sadeghi. The Mahdi Sadeghi they describe is not a flight risk and should be released.

## IV.    Nature of the Offense & Weight of the Evidence

Mr. Sadeghi made his first appearance in this Court on December 16, 2024. As of the date of this writing, he has received no discovery other than the complaint affidavit and the instant indictment.

Working off those bare accusations, the Government intends to rely on business documents to support its allegation that Mr. Sadeghi engaged in business relationships with his co-defendant, who had a business in Iran that surreptitiously provided resources to the Iranian military. Per the indictment, the co-defendant went to great lengths to conceal this involvement, and there is no evidence presented thus far that Mr. Sadeghi knew of his co-defendant's relationship with the military. Notably, the co-defendant established a business presence in Switzerland, where there is no IEEPA prohibitions on engaging in business. The evidence presented thus far suggests that the business transactions occurred between Mr. Sadeghi and the co-defendant through the Swiss business. The Government will have to establish that Mr. Sadeghi knew that his co-defendant intended these business transactions for the Iranian business. By virtue of the way this case is charged, the Government cannot demonstrate that Mr. Sadeghi

---

6 *See* Letters of Support, Exhibit 3

had any idea that information he is alleged to have shared was used in a military drone or that the information he is alleged to have shared resulted in the death of any U.S. servicemen, yet the publicity around this case will forever connect him to that horrific incident, despite it being quite clear that he played no role whatsoever.

Certainly this case has received extensive media attention and the charges are serious. However, we remind the court that the weight of the evidence and the allegations made in the indictment are the least important of the various s. 3142 factors. In a very similar case the Court relied on that same premise to overturn a detention order and release the Defendant on similar facts. In *United States v. Motamedi* an Iranian citizen who had a green card in the United States was charged with exporting arms and described as an agent of the Iranian government who could return their "with impunity."  *Motamedi*, 767 F.2d 1403 (9th Cir. 1985) In ordering his release the Court found that [i]t is apparent from the record below that the district court accorded great weight to the charges against Motamedi and the Government's assertions of his guilt. Our court has stated, however, that the weight of the evidence is the least important of the various factors." *Motamedi* at 1408.

V.    Conjecture of Outside Influences

The defendant anticipates that the Government may argue that due to the international implications of this case and the media attention it has received, there could be influences outside the defendant's control that could lead to his inability to appear.

As a matter of law, the argument that Mr. Sadeghi could become unavailable for prosecution because of the interference of a foreign government cannot be considered as a factor favoring detention under 18 U.S.C. § 3142. "[T]he risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." *United States v. Santos-Flores*, 794 F.3d

1088, 1091 (9th Cir. 2015); *see also United States v. Marinez-Patino*, No. 11 CR 064, 2011 WL 902466, at *4 (N.D. Ill. Mar. 14, 2011) ("To show that there is a serious risk that a defendant will flee, the government must show that the defendant would seek to leave through some type of voluntary act"). This is analogous to the well-established caselaw that the existence of an ICE detainer or other immigration consequence cannot be considered as a factor in favor of detention. *See United States v. Barrera-Omana*, 638 F.Supp.2d 1108, 1110 (D. Minn. 2009) (an ICE detainer "is an externality not under [the] defendant's control. As such, it must be excluded from the detention analytic."); *id.* at 1111 (a defendant cannot be considered to have "failed to appear" simply because another agency of the Government, such as ICE, prevents him from appearing by deporting him); *see also United States v. Castro-Inzunza*, No. 12-30205, 2012 WL 6622075 (9th Cir. 2012) (reversing the district court finding that "no conditions or combination of conditions will reasonably assure the [defendant's] appearance," because the government failed to show that it lacked the ability to stay or defer removal).

Similarly, the First Circuit upheld a release order in *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991), finding that despite some evidence that individuals involved in organized crime could assist a potentially fleeing defendant, there were no findings that the specifically-charged defendant had that capability. *Patriarca*, 948 F.2d at 793.

This entirely speculative risk does not weigh against the availability of a defendant. Mr. Sadeghi is prepared to encumber his home, limit the travel of himself, his wife and their two children, and be subject to electronic monitoring. There is essentially nothing more that he can offer this Court to ensure his appearance.

We attach a Proposed Order for the Court's consideration of our release conditions.

8

MAHDI SADEGHI
By his attorney,

*/s/ Jessica Thrall*
Jessica Thrall
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I, Jessica Thrall, hereby certify that this document filed through email and the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 13, 2025.

*/s/ Jessica Thrall*
Jessica Thrall